[Cite as *State v. Adkins*, 2020-Ohio-535.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2019-03-004 |
| Appellee, | : | O P I N I O N<br>2/18/2020 |
| | : | |
| - vs - | : | |
| | : | |
| ANTHONY B. ADKINS, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20180280


Jess C. Weade, Fayette County Prosecuting Attorney, Fayette County Courthouse, 110 East Court Street, Washington, Court House, Ohio 43160, for appellee

Steven H. Eckstein, 1208 Bramble Avenue, Washington Court House, Ohio 43160, for appellant


**M. POWELL, J.**

{¶ 1} Appellant, Anthony B. Adkins, appeals his convictions in the Fayette County Court of Common Pleas for engaging in a pattern of corrupt activity, in violation of R.C. 2923.32 and multiple cocaine trafficking offenses, in violation of R.C. 2925.03. For the reasons set forth below, we affirm appellant's convictions.

{¶ 2} In July 2018, the Fayette County Grand Jury indicted appellant on 27 felony drug-related offenses. These charges arose out of an investigation from January to June 2018 concerning crack cocaine sales appellant made to a confidential informant. The investigation culminated in a traffic stop and arrest by members of the Fayette County Sheriff's Office in Clinton County, Ohio. On the day of the traffic stop, the confidential informant had made a large purchase of crack cocaine from appellant. Undercover officers then tracked appellant as he travelled from his home to a suspected drug supplier in Dayton, Ohio. As part of this operation, marked patrol units had been staged to intercept appellant as he returned to Fayette County. However, en route back, appellant changed course and headed into Clinton County. Believing that appellant was heading to a friend's house, the lead officer ordered the marked patrol units to immediately effect a traffic stop. When deputies sought to stop appellant a car chase ensued. Pursuing deputies apprehended appellant after he tried to escape off-road. At no point during this pursuit was appellant in Fayette County.

{¶ 3} Appellant entered a not guilty plea and the case proceeded to a jury trial in February 2019. At trial, the state called nine witnesses, including the confidential informant, the various law enforcement officers involved, and an Ohio Bureau of Criminal Investigation ("BCI") forensic scientist. In addition to the witnesses, the state presented BCI laboratory reports to identify the substances as containing cocaine and video recordings of the drug buys.

{¶ 4} At the close of the state's case-in-chief, appellant objected to the admission of several laboratory reports because the documents lacked the notarized statement required by statute. The trial court sustained the objection. As a result, the trial court granted appellant's Crim.R. 29 motion for the 12 offenses (Counts 2-7 and 10-15) involving the inadmissible laboratory reports. The jury found appellant guilty on the remaining 15

counts, alleging engaging in a pattern of corrupt activity, possession of cocaine, and trafficking in cocaine.

{¶ 5} At the sentencing hearing in March 2019, the trial court determined that the possession offenses were allied offenses of similar import to the trafficking offenses and merged the possession offenses into their corresponding trafficking offenses. Accordingly, the trial court sentenced appellant to an aggregate 20-year prison term for conviction of the following eight offenses:

- Count 1, engaging in a pattern of corrupt activity, a first-degree felony in violation of R.C. 2923.32(A)(1);
- Counts 8, 16, 18, and 22, trafficking in cocaine, fifth-degree felonies in violation of R.C. 2925.03(A)(1) and (C)(4)(a);
- Count 20, trafficking in cocaine, a fourth-degree felony in violation of R.C. 2925.03(A)(1) and (C)(4)(c);
- Count 24, trafficking in cocaine, a first-degree felony in violation of R.C. 2925.03(A)(1) and (C)(4)(f);[1] and
- Count 26, trafficking in cocaine, a first-degree felony with a major drug offender specification in violation of R.C. 2925.03(A)(2) and (C)(4)(g)

{¶ 6} Appellant now appeals, raising four assignments of error for review. For ease of analysis, the first and second assignments will be considered together and the third and fourth assignments will be considered together.

{¶ 7} Assignment of Error No. 1:

{¶ 8} TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO FILE A MOTION TO SUPPRESS IN VIOLATION OF DEFENDANT-APPELLANT'S RIGHTS THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO

---

1. The sentencing entry incorrectly cites R.C. 2925.03(C)(4)(g) as the controlling subsection regarding the quantity of cocaine involved in the offense. However, whether the quantity of cocaine involved is the amount specified in R.C. 2925.03(C)(4)(f) or (g), the offense remains a first-degree felony with a mandatory prison term.

- 3 -

CONSTITUTION. ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION

{¶ 9} Assignment of Error No. 2:

{¶ 10} TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO FILE A PRETRIAL MOTION TO DISMISS COUNTS 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, & 15 OF THE INDICTMENT THEREBY DENYING DEFENDANT-APPELLANT A FAIR TRIAL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION. ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 11} In his first two assignments of error, appellant argues that his trial counsel was constitutionally infirm for two reasons. First, he contends that his trial counsel provided ineffective assistance when he did not move to suppress the evidence seized by Fayette County deputies during an extra-territorial arrest in Clinton County. In support, appellant argues that the Fayette County Sheriff's Office violated R.C. 2935.03 by stopping and arresting him outside Fayette County and thus the evidence seized from that stop should have been excluded. Second, appellant argues that his trial counsel provided ineffective assistance by not moving to dismiss the charges involving the defective laboratory reports before trial because this allowed the jury to hear impermissible character evidence regarding other drug transactions.

{¶ 12} In a criminal proceeding, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions. Sixth Amendment to the U.S. Constitution and Article I, Section 10, Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984); *State v. Hester*, 45 Ohio St.2d 71 (1976). On review, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. Accordingly, appellant bears

the burden of proving that his trial counsel was constitutionally infirm. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 142. To prevail on an ineffective assistance of counsel claim, appellant must demonstrate that (1) his counsel's performance was deficient, that is, it fell below an objective standard of reasonable representation, and (2) he suffered prejudice, that is, there is a reasonable probability the outcome of the proceeding would have been different but for trial counsel's errors. *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 16, citing *Strickland* at 687-688 and *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. A failure to satisfy either prong of this test is fatal to the ineffective assistance claim. *State v. Manning*, 12th Dist. Butler No. CA2017-08-113, 2018-Ohio-3334, ¶ 20.

{¶ 13} Regarding the first assignment, the "failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made." *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 11. Relevant for our purposes, R.C. 2935.03(A)(1) provides that a

> sheriff [or] deputy sheriff * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision, * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township.

{¶ 14} It is with the limited "hot pursuit" exception provided in R.C. 2935.03(D) that these peace officers may conduct a warrantless arrest and detention of an individual outside their territorial jurisdiction. Appellant suggests that the "hot pursuit" exception is inapplicable because the Fayette County deputies' pursuit was not initiated within Fayette County. Nevertheless, R.C. 2935.03 does not provide a remedy for instances when peace officers violate the statute by effecting a warrantless arrest outside their territorial jurisdiction

and the Ohio Supreme Court has refused to adopt its own remedy for a violation of this statute. *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, ¶ 21. Therefore, appellant's reliance on R.C. 2935.03 is misplaced. A violation of R.C. 2935.03 does not require the exclusion of evidence. *Id.*; *State v. Weideman*, 94 Ohio St.3d 501, 2002-Ohio-1484, paragraph one of the syllabus; *State v. Dallman*, 12th Dist. Clermont Nos. CA2017-11-056 and CA2017-11-057, 2018-Ohio-2670, ¶ 32. Any motion to suppress based on this statutory violation alone would not have been successful.

{¶ 15} To invoke the exclusionary rule, the sole issue for a court to consider is whether the stop was constitutionally valid pursuant to the Fourth Amendment to the United States Constitution.[2] *Jones*, 2009-Ohio-316 at ¶ 20, citing *Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598 (2008). A traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391 (1979) and *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138 (1984). Further, peace officers may make a warrantless arrest of an individual if they have probable cause to do so. *State v. Timson,* 38 Ohio St.2d 122 (1974), paragraph one of the syllabus. Probable cause is based on objective facts and exists when a reasonably prudent person would believe the arrestee has committed a crime. *State v. Abrams*, 12th Dist. Clermont No. CA2007-03-040, 2008-Ohio-94, ¶ 12. The reasonable suspicion standard, while still requiring specific facts from the totality of circumstances, is less demanding than the probable cause standard. *State v. Hairston*, 156 Ohio St.3d 363,

---

2. In felony cases, Article I, Section 14 of the Ohio Constitution affords the same protection as the Fourth Amendment against searches and seizures. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶ 12. On the other hand, the Ohio Supreme Court has held that Article I, Section 14 of the Ohio Constitution provides greater protection than the federal constitution involving minor misdemeanor offenses and therefore, in those instances, the exclusionary rule applies. *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 26; *See also State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, paragraph one of the syllabus.

2019-Ohio-1622, ¶ 10.

{¶ 16} Here, we find that the sheriff's deputies involved had the requisite reasonable and articulable suspicion to stop the vehicle and had probable cause to arrest appellant. Appellant had made several crack cocaine sales to a confidential informant who was under the supervision and surveillance of Fayette County law enforcement officers. On the day he was arrested, appellant had made one of his largest sales of crack cocaine to the confidential informant. Following that sale, deputies maintained close surveillance of appellant in the belief that that he would contact his supplier to procure more cocaine. The lead officer – who ordered the traffic stop – knew about the crack cocaine purchase the informant had made earlier in the day and was part of the surveillance operation tracking appellant from Dayton. Therefore, based on the totality of the circumstances, the deputies had sufficient information to believe that appellant's trip to Dayton was a supply run to obtain more cocaine. Moreover, based on the prior crack cocaine purchases, the deputies had probable cause to arrest appellant for the possession and trafficking of cocaine.

{¶ 17} Consequently, appellant cannot demonstrate that the stop and arrest violated his constitutional rights. A motion to suppress on constitutional grounds would have also failed. Therefore, appellant cannot show that his trial counsel's performance was deficient. Appellant's ineffective assistance claim on the first assignment of error lacks merit.

{¶ 18} Turning to appellant's second assignment, it was not deficient for his trial counsel to raise the issue of inadmissible evidence at trial instead of a pretrial motion to dismiss. Appellant's counsel discovered that several of the laboratory reports relied upon by the prosecution did not conform to R.C. 2925.51(A).[3] Rather than apprise the prosecution in a pretrial motion, appellant's counsel waited to raise the issue at trial. This

---

3. R.C. 2925.51 requires a notarized statement by the report "signer" to be attached to the report.

strategy benefited appellant because the prosecution was unable to correct the defect or present additional evidence to prove that several of the purchased substances contained cocaine. By pursuing this strategy, appellant's counsel secured an acquittal on several offenses, notwithstanding the fact that this strategy afforded the prosecution an opportunity to present testimony regarding additional cocaine sales.

{¶ 19} On the other hand, a pretrial motion would have alerted the prosecution to the deficiency in the laboratory reports and provided an opportunity to correct the defect in time for trial. Even if appellant's counsel had successfully obtained pretrial dismissal of the charges, appellant remained exposed to re-indictment for these charges. While the success of a trial strategy is not the operative factor for an ineffective assistance claim, *Strickland*, 466 U.S. at 689, given the alternatives in this case, this court cannot find appellant's trial counsel performed deficiently when he pursued the strategy he chose and ultimately succeeded. It is not an appellate court's role to second-guess trial strategy decisions. *State v. Cepec,* 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 52. Appellant's ineffective assistance claim on the second assignment of error likewise lacks merit.

{¶ 20} In light of the foregoing, appellant's first and second assignments of error are overruled.

{¶ 21} Assignment of Error No. 3:

{¶ 22} THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S CRIM.R 29 MOTION FOR ACQUITTAL AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT IN VIOLATION OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 23} Assignment of Error No. 4:

{¶ 24} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 25} In his third and fourth assignments of error, appellant argues that there was insufficient evidence to find him guilty of engaging in a pattern of corrupt activity and the multiple drug offenses, therefore the trial court erred in denying his Crim.R. 29 motion for acquittal. Appellant further argues that the guilty verdicts were against the manifest weight of the evidence. In support of these claims, appellant argues that it was improper for the jury to believe the confidential informant's testimony.

{¶ 26} The standard of review for a denial of a Crim.R. 29 motion is the same standard used for reviewing a sufficiency of the evidence challenge. *State v. Robinson,* 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. On a sufficiency challenge, the reviewing court must determine whether the prosecution has met its burden of production. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. Therefore, the reviewing court must examine the evidence to determine whether any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith,* 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25.

{¶ 27} On the other hand, a manifest weight of the evidence challenge requires the reviewing court to examine the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In conducting this

- 9 -

examination, a reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Sizemore*, 12th Dist. Warren No. CA2019-01-006, 2019-Ohio-4400, ¶ 21. While a manifest weight of the evidence review requires this court to evaluate credibility, the determination of witness credibility is primarily for the trier of fact to decide. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. A reviewing court will overturn a conviction based on a manifest weight challenge only in the exceptional instance, to correct a manifest miscarriage of justice, where the evidence weighs heavily in favor of acquittal. *State v. Wilson,* 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34. The determination that a conviction is supported by the manifest weight of the evidence will be dispositive of the sufficiency of the evidence challenge. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 28} The jury found appellant guilty of both trafficking in cocaine and possession of cocaine. Appellant was charged with two different types of trafficking offenses. For six of the trafficking offenses, the prosecution had to prove that appellant knowingly sold or offered to sell a controlled substance or a controlled substance analog. R.C. 2925.03(A)(1). For the remaining trafficking offense, the prosecution had to prove that appellant knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed a controlled substance or a controlled substance analog, when the offender knew or had reasonable cause to believe that the controlled substance or a controlled substance analog was intended for sale or resale by the offender or another person. R.C. 2925.03(A)(2). For each of the possession offenses, the prosecution had to prove that appellant knowingly obtained, possessed, or used a controlled substance or a controlled

substance analog. R.C. 2925.11(A). In order for these offenses to constitute more serious felonies the prosecution had to prove a certain mass, i.e. to constitute a fourth-degree felony the cocaine had to be at least 5 grams but less than 10 grams and to constitute a first-degree felony the substance containing cocaine had to be at least 27 grams but less than 100 grams. R.C. 2925.03(C)(4)(c) and (f).[4] Finally, appellant was charged with a major drug offender specification on count 26, therefore the prosecution had to prove that the transaction involved a substance containing cocaine of more than 100 grams. R.C. 2925.03(C)(4)(g).

{¶ 29} After review of the record, we find that the guilty verdicts were not against the manifest weight of the evidence. The jury heard the confidential informant testify that on each occasion he met appellant at either his home or a nearby hotel and exchanged money for crack cocaine. The informant testified that he only received the crack cocaine from appellant in these transactions. In addition to the confidential informant, the jury heard from three detectives involved in the investigation. These detectives testified that on each occasion the confidential informant was physically searched by one of the detectives and then driven by a detective to the sale location. During the operation, the informant was under law enforcement supervision except for the short time he would leave the vehicle to conduct the purchases. Upon coming back to the vehicle, all the witnesses involved in the operation testified that the informant would give the crack cocaine to the detective escorting him. These detectives, together with the detective assigned to evidence room supervision, testified as to the chain of custody for the substances received from these transactions. Moreover, the prosecution presented video recordings taken from a device the informant carried into several of his "buys." In these videos, appellant can be identified as the person

---

4. The degree of felony for cocaine possession pursuant to R.C. 2925.11(C)(4) uses the same mass/weight standards as the trafficking offenses in R.C. 2925.03(C)(4).

meeting with the informant. Finally, the state presented laboratory reports from the BCI identifying the purchased substances as containing cocaine and their various weights. Altogether, this evidence demonstrated that appellant knowingly possessed and sold crack cocaine to the informant in six transactions, two of which involved substances with a mass of 5.5 grams and 35.44 grams. Appellant's convictions are not against the manifest weight of the evidence because the jury believed the testimony of the prosecution's witnesses. *State v. Burrell*, 12th Dist. Fayette No. CA2016-04-005, 2016-Ohio-8454, ¶ 22.

{¶ 30} For the R.C. 2925.03(A)(2) trafficking offense and major drug offender specification, the prosecution presented testimony from the deputies involved in the traffic stop. One deputy testified that during the pursuit, he saw appellant dumping objects out of his window. In searching the field, deputies discovered two bags of suspected cocaine on the ground near the tire tracks created by appellant's vehicle. The prosecution presented photographs taken of the two bags at the scene. To identify the substances, the prosecution called the BCI forensic scientist to testify, in addition to submitting her laboratory report. The scientist testified that through her testing she determined the substances contained cocaine and the substance from one bag weighed around 53.78 grams and the other weighed around 52.93 grams. Therefore, this evidence again demonstrated that appellant knowingly trafficked cocaine in an amount of more than 100 grams.

{¶ 31} Finally, to find appellant guilty of engaging in a pattern of corrupt activity, the prosecution had to prove that he conducted or participated in, directly or indirectly, the affairs of an enterprise through a pattern of corrupt activity, or the collection of an unlawful debt, as part of his employment or association with that enterprise. R.C. 2923.32(A)(1). An enterprise includes an individual. R.C. 2923.31(C). Corrupt activity is defined, inter alia, as engaging in conduct constituting a violation of R.C. 2925.03 and the proceeds from one of the violations or a combination of the violations exceeds $1,000. R.C. 2923.31(I)(2)(c). A

pattern of corrupt activity means two or more instances of corrupt activity, whether or not there is a prior conviction, related to the affairs of the same enterprise. R.C. 2923.31(E). Here, the jury heard evidence as to the various amounts of money the confidential informant paid for the separate transactions of crack cocaine. In his final transaction alone, the informant paid around $1,800 for crack cocaine, altogether the informant paid over $2,000 for the combination of transactions. Moreover, a detective testified that appellant admitted during an interview to paying his supplier $4,400 on the day of his arrest. Therefore, based on the testimony of the amounts paid and the guilty verdicts for the multiple possession and trafficking offenses, it was not a manifest injustice for the jury to find appellant guilty of engaging in a pattern of corrupt activity.

{¶ 32} Accordingly, the jury did not clearly lose its way and create a manifest miscarriage of justice. Given our determination that appellant's convictions were supported by the manifest weight of the evidence, we conclude that the there was sufficient evidence to support the jury's findings of guilt. *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11. Appellant's third and fourth assignments of error are overruled.

{¶ 33} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.

- 13 -